No. 32,525

Mary L. Tromp, *Appellee*, v. The National Reserve Life Insurance Company, *Appellee*, and Beatrice V. Tromp, and Beatrice V. Tromp, as Administratrix, etc., *Appellant*.

(53 P. 2d 831)

Opinion filed January 25, 1936.

*J. J. Schenck* and *C. P. Schenck*, both of Topeka, for the appellant.

*Hugh T. Fisher* and *Irwin Snattinger*, both of Topeka, for the appellee.

The opinion of the court was delivered by

Thiele, J.: This appeal involves the right to the proceeds of a life insurance policy. As the question was determined by a ruling on demurrer to an answer, the pleadings will be reviewed.

Mary L. Tromp brought her action against the insurance company alleging that the company on November 27, 1925, issued its policy of insurance upon the life of Harry Clifford Tromp, and payable at his death to her, that the policy was in full force on April 9, 1934, when he died; that she had made proofs of death and complied with the terms and conditions of the policy and there was due her

the sum of $5,000, which the company had failed to pay and for which she prayed judgment. The company answered admitting the issuance of the policy and that there was due the principal sum, and that plaintiff had made demand. It further alleged that after the issuance of the policy plaintiff and the insured were divorced, and the insured had married one Beatrice V. Tromp, who had notified the company she claimed the proceeds of said policy as the widow of the insured and the administratrix of his estate. It disclosed a willingness to pay the proceeds of the policy into court provided an order was made requiring Beatrice V. Tromp to appear personally as widow of the insured and as administratrix of his estate, and maintain or relinquish her claim. The trial court made an appropriate order, and Beatrice V. Tromp individually, and as administratrix of the estate of Harry Clifford Tromp, filed an answer admitting the issuance of the policy sued on and the death of the insured. She alleged her appointment and qualification as administratrix, also that Harry Clifford Tromp filed suit in Sedgwick county, Kansas, for divorce from Mary L. Tromp; that by arrangement he withdrew his petition, she filed a cross petition and on June 12, 1933, a decree of divorce was rendered; that said decree was not appealed from and is now final; that in the decree of divorce Mary L. Tromp was not given any right, title or interest of any kind in the policy of insurance sued on; that at the time of the decree she had no vested right or interest in said policy of insurance, and at the time no insurable interest in the life of the insured. It was alleged also that after six months from the date of the above decree Harry Clifford Tromp was married to Beatrice V. Tromp, who was his lawful wife at the time of his death. It was also alleged that Mary L. Tromp never paid any premiums on the policy and repeated allegations that she had no vested interest in it. There was further allegation that on April 1, 1930, an involuntary petition in bankruptcy was filed against Harry Clifford Tromp; that in the schedules of his assets and liabilities he did not list said insurance because he then believed and continued to believe up to the time of his death that it had lapsed. A further allegation was that in the divorce proceedings Harry Clifford Tromp alleged he had given certain real and personal property to Mary L. Tromp "which at said time was all of the property, both personal and real, owned by the plaintiff and defendant." A list of debts totaling $1,239.50, left by Harry Clifford Tromp, was set out, and it was alleged he left no

property to pay the same except the proceeds of the insurance. This list does not include any part of the alimony judgment. It was also alleged:

"These defendants further say that the policy of insurance sued upon herein was taken out by the plaintiff herein and the said Harry Clifford Tromp at the urgent solicitation of the plaintiff; and, the said Harry Clifford Tromp intended at that time that his indebtedness owing by him at the time of his death, including the cost and expenses of his last sickness and funeral expense, should be paid out of said policy of insurance."

Certain clauses of the policy of insurance with reference to premium reductions, accumulation of benefits, options for a paid-up policy, for options on surrender and lapse and for automatic extension of insurance are set out, together with a clause reserving right to change the beneficiary, the right to declare the designation of a beneficiary irrevocable, and the methods for so doing. It was alleged that no irrevocable designation was ever made. There was also an allegation that no premiums were paid after the divorce action, and that the policy remained in force under provision made for automatic extended insurance. Attached to the answer as an exhibit was a copy of the divorce decree, dated June 12, 1933, showing alimony allowed in the sum of $1,500 payable at the rate of $5 per week for two years from June 19, 1933, and thereafter at the rate of $7.50 per week, until the amount is fully paid. This decree is silent respecting any property rights of Harry Clifford Tromp. The prayer of the answer was that Beatrice V. Tromp, individually and as administratrix, recover the proceeds of the policy.

Plaintiff demurred to this answer as not stating facts sufficient to constitute a defense, and the demurrer being sustained, Beatrice V. Tromp, in both capacities, appeals, urging that Mary L. Tromp had no vested interest in the policy of insurance at any time; that she had no insurable interest in the life of the insured after the decree of divorce, and that the decree of divorce destroyed any insurable interest she may have had in her divorced husband's life and settled all property rights between them. Although what is said in discussing one proposition may be applicable to another, these propositions will be discussed in the order presented by appellant.

The insured having reserved a right to change his beneficiary, the named beneficiary, prior to the death of the insured, had no vested interest in the benefits under the policy. (See *Antrim v. Inter-*

*national Life Ins. Co.,* 128 Kan. 65, 275 Pac. 1084; 14 R. C. L. 1387; 37 C. J. 579.) In the last-cited authority it is said that some cases take the view the beneficiary has a conditional, contingent, qualified, defeasible or vested defeasible interest, and that a reserved right to change the beneficiary does not change the nature of his rights as beneficiary so long as they last. The holding in *Filley v. Insurance Co.,* 91 Kan. 220, 137 Pac. 793; 93 Kan. 193, 144 Pac. 257; 93 Kan. 197, 144 Pac. 257, that the interest of the beneficiary was vested, is not here controlling, for in that case no right was reserved to change the beneficiary. In the case now before us, notwithstanding the reserved right to change the beneficiary, no effort to do so was made, and we proceed to examine the remaining propositions urged by appellant why the named beneficiary should not recover.

It is said that plaintiff had no insurable interest in the life of Harry Clifford Tromp after the divorce. When Harry Clifford Tromp procured the policy of insurance it was on his own life, in which he had an insurable interest, and there being no statutory or other reason urged why he could not do so, he was at liberty to name as his beneficiary anyone whom he chose. (*Hoffman v. Federal Reserve Life Ins. Co.,* 123 Kan. 554, 255 Pac. 980.) Further than that, at the time the policy was issued, plaintiff was the wife of the insured and had an insurable interest in his life. (14 R. C. L. 923, 37 C. J. 394.) Appellant, in support of her contention plaintiff has no insurable interest in the insured's life after the decree of divorce, cites *Life Ins. Co. v. Sturges,* 18 Kan. 93; *Insurance Co. v. Elison,* 72 Kan. 199, 83 Pac. 410; and *Thomas v. Connecticut Mutual Life Ins. Co.,* 124 Kan. 159, 257 Pac. 727, decisions from other jurisdictions and other authorities to the effect that a person who has no interest in another's life cannot purchase or take by assignment an insurance policy on the insured's life, it being unauthorized by law and contrary to public policy. In the Kansas cases cited, at the time of designation the beneficiary had no insurable interest in the insured's life, and the cases are not in point here. Compare *Sinclair Refining Co. v. Long,* 139 Kan. 632, 32 P. 2d 464.

Attention has been directed to the terms of the divorce decree with reference to alimony. In the answer there is no allegation the insured ever paid to his first wife the full amount of alimony allowed in a lump sum rather than in installments as provided in the decree. If it were to be paid as ordered, the final payment of $7.50 would not have been due until October, 1937. The insured died April 9,

1934, and about forty-four weeks after the decree was rendered. Had the insured been paying according to the decree, he would in that period of time have paid $215, leaving unpaid at the time of his death the sum of $1,285. It thus appears the first wife had a substantial financial interest in her former husband's life, and that it was created and not destroyed by the divorce decree. The general rule is that a creditor has an insurable interest in the life of his debtor. (14 R. C. L. 924.)

In *Johnson v. United Workmen*, 91 Kan. 314, 137 Pac. 1190, 50 L. R. A., n. s., 461, where a policy issued by a fraternal benefit society was involved, it was held an alimony judgment did not make a divorced wife a dependent and entitled to the proceeds of a matured policy, unless it were shown that by the death of her former husband she was deprived of all means to enforce collection of the judgment. In that class of insurance, where the beneficiaries are limited to dependents as classified in the statute, a stricter rule obtains than in the case of so-called old-line insurance. In the case before us it is alleged in the answer that at the time of the divorce the husband turned over to his first wife all of his property, and it is also alleged that at his death he left no property to pay his debts. Passing for the moment the insured's right to have a policy issued on his own life, the benefits to be payable to any person whom he designated, it appears that when the policy was issued plaintiff had an insurable interest in her husband's life, and when the divorce decree was rendered, by its terms a financial relation was created between them under which she had a further insurable interest in his life. It is not necessary to discuss the proposition that if the named beneficiary has an insurable interest at the time the policy is issued, such interest must thereafter continue until death of the insured. It is here sufficient to say the plaintiff is not precluded from recovery on the ground she had no insurable interest in the life of her divorced husband after the decree of divorce.

The final proposition is that the decree of divorce operated to cut off plaintiff's rights under the policy of insurance. What has been said has some bearing on this proposition and need not be repeated. There are many decisions dealing with the above proposition, and it has been generally held that a decree of divorce does not terminate the rights of the wife in a policy on the life of her divorced deceased husband, although authority to the contrary may be found (37 C. J. 397; 14 R. C. L. 1380, and other authorities here-

after cited). The question has been before this court in at least two cases, in both of which are certain elements differing from the case at bar. In *Filley v. Insurance Co.*, 91 Kan. 220, 137 Pac. 793, L. R. A. 1915D 130, there was contention as to who was the beneficiary under the designation in the policy, and as to whether the rights of the first wife were vested, and it was said:

"The provisions of this policy are more like the provisions of old-line life insurance policies than fraternal certificates. In this class of insurance policies we believe it is generally held that when a married woman is named as a beneficiary in a policy of insurance on the life of her husband, she is entitled to the proceeds of the policy notwithstanding a divorce has been obtained by her before his death. (*Overhiser v. Overhiser*, 14 Colo. App. 1, 59 Pac. 75; *Prudential Ins. Co. v. Morris*, [N. J. Eq.] 70 Atl. 924; *Overhiser's Adm'x v. Overhiser*, 63 Ohio St. 77, 57 N. E. 965; *Overbeck v. Overbeck*, 155 Pa. St. 5, 25 Atl. 646; *White v. Brotherhood of American Yeomen*, 124 Ia. 293, 99 N. W. 1071; *Brown v. Grand Lodge*, 208 Pa. St. 101, 57 Atl. 176; *Courtois v. Grand Lodge*, 135 Cal. 552, 67 Pac. 970; *Wallace v. Mutual Ben. Life Ins. Co.*, 97 Minn. 27, 106 N. W. 84, 3 L. R. A., n. s., 478.)" (p. 225.)

A rehearing was allowed, and from the opinion (93 Kan. 193, 144 Pac. 257) it is readily discernible that the reason for the rehearing was to examine whether or not the policy in question was in a fraternal benefit association or an old-line life insurance company. Later an opinion was rendered (93 Kan. 197, 144 Pac. 257) in which the entire record was reëxamined, and the original conclusion that the first, but divorced, wife was entitled to the proceeds of the policy was adhered to. The principal difference between that case and the one before us is that there the insured had no right to change the beneficiary, while here he had such a right and privilege. It would seem on principle that a less rigid rule would be invoked against the divorced wife, where right to change beneficiary was reserved, than against one where there was no such reservation, as in the Filley case.

In *Johnson v. United Workmen*, 91 Kan. 314, 137 Pac. 1190, the question was again presented. The holding has been mentioned heretofore.

Although the effect of divorce proceedings was not mentioned in *Hoffman v. Federal Reserve Life Ins. Co.*, 123 Kan. 554, 255 Pac. 980, a somewhat similar situation was presented. The parties were married in 1922, insurance was procured on the wife's life in 1923, the husband being designated as beneficiary. In 1925 the husband procured annulment of the marriage on the ground that at the

time of the marriage the wife had a living undivorced husband. Thereafter the insured went to live with her parents. She took her own life, leaving a note which it was contended amounted to a change of beneficiary. The legal question involved was whether the husband had an insurable interest in the life of the insured. It was held the insured had an insurable interest in her own life and, there being no statutory or other reason to the contrary, could designate whom she chose as beneficiary, and recovery was allowed to the former husband and denied to the administratrix of the insured's estate.

In *Bussey v. Praetorians Life Ins. Co.*, 138 Kan. 575, 27 P. 2d 275, recovery was denied to a divorced wife who was designated as beneficiary, a subsequent attempt to designate another being ineffective, but the decision turned largely on the fact the policy was in a fraternal benefit society.

In support of her contention appellant relies largely on *Sea, Admr., v. Conrad*, 155 Ky. 51, 159 S. W. 622, 47 L. R. A., n. s., 1074, Ann. Cas. 1915C 318, where it was held that a decree of divorce cut off the divorced wife's right in a paid-up policy on her husband's life. In 52 A. L. R. 386 will be found an annotation on divorce of insured and beneficiary as affecting the latter's right in life insurance, from which it appears that in Kentucky the matter is governed by statute, it being said:

"In the absence of terms in the policy indicating that the rights of the beneficiary thereunder are conditioned upon continuance of the marriage relation then existing between beneficiary and insured (citing authority) or regulation of the matter by statute (referring to Kentucky cases) the general rule prevailing in those jurisdictions (other than Texas and Quebec) where the question has been passed upon is that the rights of the beneficiary in an ordinary life insurance policy, including the right to receive the proceeds thereof upon the maturity of the policy, are in no way affected by the mere fact that the parties are divorced subsequent to issuance of the policy." (p. 389.)

Many cases are cited in support.

In 2 Couch on Insurance, page 1268, § 440h, is a discussion of the effect of divorce on regular life insurance, in which it is said:

"The usual question, however, is whether or not a subsequent divorce terminates the rights of the wife as beneficiary in a policy of insurance previously issued upon the life of her husband. As to this, there is some conflict of authority. In Kentucky, proceeding in view of a statute requiring restoration, upon divorce of the parties, of any property obtained by one from the other during the marriage, in consideration or by reason thereof, and upon

the ground that the wife no longer has an insurable interest in the life of her husband, it is held that a wife who is named as beneficiary in a policy of insurance on the life of her husband cannot, after termination of the marriage relationship, keep the policy alive by paying the annual premiums thereon; but this statute has been held inapplicable to a case in which the wife herself takes out the policy and pays all the premiums. (Citing Kentucky cases.) Again, under the rule prevailing in some jurisdictions, that any interest in a life insurance policy terminates upon cessation of an insurable interest, it has been held that a wife's interest in a policy on her husband's life ceases upon the rendering of a decree of divorce, and this though the divorce was obtained for the fault of the husband (citing Texas and Quebec cases), and except only to the extent of the premiums paid by her. But the general rule is that the right of the wife, as beneficiary, to the proceeds of a policy upon the life of her husband, issued prior to divorce of the parties, is not subject to the objection that the divorce terminated her insurable interest, under the rule prevailing in most jurisdictions that a life policy, originally valid, does not cease to be so by the cessation of the assured's interest in the life insured; in other words, that a subsequent divorce does not devest a wife's insurable interest so far as prior insurance is concerned, even though she remarries, unless such be the necessary effect of the provisions of the policy itself." (p. 1269.)

In 7 Cooley's Briefs on Insurance, 2d ed., 6358, it is stated:

"In the absence of statute or regulation of the insurer to the contrary, a decree of divorce in itself in no way affects the rights of the divorced wife in a policy of insurance on her husband's life or her authority to demand and receive the amount payable in virtue of its terms."

And see, also, the notes in L. R. A., n. s., where the following cases are reported: *Wallace v. Mutual Benefit Life Insurance Co.*, 97 Minn. 27, 106 N. W. 84, 3 L. R. A., n. s., 478, and *Green v. Green*, 147 Ky. 608, 144 S. W. 1073, 39 L. R. A., n. s., 370.

Appellant also urges our statute with reference to property settlements when a divorce is granted (R. S. 60-1511), and the finality of a judgment in a divorce action. We have no quarrel therewith. But the cases cited deal with no situation such as we have here. It has been observed the plaintiff had no vested right in the policy. There was no occasion for the court, when determining the divorce matter, to make any order connected with the policy of insurance. It was nothing that had to be set off to the wife, it belonged to the husband and he had power under the policy to make such disposition of it, as, under its terms, he saw fit. He had reserved a right to change his beneficiary, and that he could have done either before or after the divorce action.

Neither are we concerned with the insured's reasons for obtaining the insurance or for not changing the beneficiary. It is true the

answer alleges he procured the insurance to provide funds to pay his debts, but another allegation contradicts this, for it is alleged he made his first wife, and not his executors or administrators, his beneficiary. (And see the statute hereafter mentioned.) What motives prompted the insured to procure the policy, why after the divorce proceedings he did not designate either his second wife or his executors or administrators as beneficiary, or whether he felt the proceeds, in event of his death, should justly go to his first wife, are of no consequence. With full power to change his beneficiary, he let the policy stand as originally written. All that we may assume is that he left the policy as he wanted it. We are not warranted in making another and different disposition. Our conclusion is that the rights of the first wife as the designated beneficiary were not affected by the decree in the divorce action.

Appellee directs our attention to R. S. 1933 Supp. 40-414 as being decisive of who is entitled to the proceeds of the policy. It may be open to argument whether that statute was intended to do more than to preserve to the beneficiary the reserves and benefits payable under the policy, freed from the claims of creditors of the beneficiary and the insured, and it not being necessary to a decision of the instant case, we express no opinion thereon.

The trial court ruled correctly on the demurrer to appellant's answer, and its judgment is affirmed.